CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Isabel Rose Masanque, SBN 292673
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
IsabelM@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**, <br><br> Plaintiff, <br><br> v. <br><br> **Starbucks Corporation,** a Washington Corporation; <br><br> Defendant. | **Case:** 2:17-CV-01718-KJM-KJN <br><br> **Plaintiff's Memorandum of Points and Authorities** <br><br> Date:   April 5, 2019 <br> Time:  10:00 a.m. <br> Ctrm:   3 (15th Floor) <br><br> Hon. Kimberly J. Mueller |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................... i

TABLE OF AUTHORITIES .......................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ......................... 1

   I.  PRELIMINARY STATEMENT ....................................................... 1

   II.  RELEVANT FACTS ........................................................................ 1

   III.  LEGAL STANDARD ................................................................... 3

   IV.  THE LACK OF ACCESSIBLE FACILITIES ............................. 3

     A.  Plaintiff is Disabled ................................................................... 5

     B.  Defendants Own, Operate, Lease or Lease to a Place of Public Accommodation .................................................................... 6

     C.  The Starbucks Had Barriers ............................................................ 6

     D.  The Barriers Are Readily Achievable to Remove ...................... 10

     E.  The Plaintiff Personally Encountered These Violations and Is Being Deterred From Patronage ................................................ 10

V. THE LACK OF ACCESSIBLE FACILITIES IS UNLAWFUL UNDER CALIFORNIA LAW ......................................................... 10

   VI.  REMEDIES .................................................................................. 11

   VII.  CONCLUSION ........................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*
   603 F.3d 666 (9th Cir. 2010).................................................................. 4

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986).................................................................................. 3

*Chapman v. Pier 1 Imports (U.S.) Inc.*
   631 F.3d 939 (9th Cir. 2011).............................................................. 4, 7

*Cullen v. Netflix, Inc.*,
   880 F.Supp.2d 1017 (N.D. Cal. 2012) ................................................. 11

*D'Lil v. Best Western Encina Lodge & Suites*,
   538 F.3d 1031 (9th Cir. 2008) ............................................................. 11

*Doran v. 7-Eleven, Inc.*,
   524 F.3d 1034 (9th Cir. 2008) ............................................................. 11

*Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004) ........ 7

*Independent Living Resources v. Oregon Arena Corp.*, 1 F.Supp.2d 1159,
   1172 (D.Or.1998) ................................................................................ 8

*Moeller v. Taco Bell Corp.*
   816 F.Supp.2d 831 (N.D. Cal. 2011) ..................................................... 4

*Molski v. M.J. Cable, Inc.*,
   481 F.3d 724 (9th Cir. 2007).............................................................. 11

*Rush v. Denco Enterprises, Inc.*,
   857 F. Supp. 2d 969 (C.D. Cal. 2012) .................................................. 7

**Statutes**

42 U.S.C. § 12102(2)(A) ............................................................................. 5
42 U.S.C. § 12181(7)(B) ............................................................................. 6
42 U.S.C. § 12181(7)(F)............................................................................. 6

42 U.S.C. § 12188(a) ................................................................................... 5

42 U.S.C. §§ 12183(a)(2) ........................................................................ 4, 5

Cal. Civ. Code § 55.56(a) ......................................................................... 12

Cal. Civ. Code § 55.56(b) ......................................................................... 12

Cal. Civ. Code § 55.56(e) ......................................................................... 12

Civ. Code § 51 (f) ..................................................................................... 10

**Other Authorities**

1991 Standards § 4.13.9; 2010 Standards § 404.2.7 ................................. 9

1991 Standards § 7.2(1) ............................................................................. 7

2010 Standards § 904.4 & 904.4.1. ........................................................... 7

28 C.F.R. § 36.211(a) ................................................................................ 8

28 C.F.R. § 36.304(b) .............................................................................. 10

Department of Justice, Technical Assistance Manual on the American with Disabilities Act (BNA) §§ III-4.4100 (1991) ............................... 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Plaintiff Scott Johnson is quadriplegic. He has brought this action against Starbucks because the Defendant failed, and continues to fail, to provide an accessible transaction counter and door hardware at their North Highlands Starbucks and Sacramento Starbucks.

In this motion, Plaintiff seeks a ruling that his rights were violated under the Unruh Civil Rights Act, statutory penalties of $8,000, and an Order requiring the defendant to provide and maintain an accessible transaction counter and door hardware, as defined by the Americans with Disabilities Act. The plaintiff respectfully requests this Court grant his motion.

## II. RELEVANT FACTS

Scott Johnson is quadriplegic. He cannot walk and uses a wheelchair for mobility. He also has significant manual dexterity impairments. (SUF #1). Mr. Johnson drives a specially equipped van with a lift that deploys from the passenger side of the van to accommodate his wheelchair. He has been issued a Disabled Person Placard by the California Department of Motor Vehicles. (SUF #2).

The Starbucks locations at issue are located at 4981 Watt Ave., North Highlands, California ("North Highlands Starbucks") and at 3615 Power Inn Rd., Sacramento, California ("Sacramento Starbucks"). (SUF #3). Mr. Johnson has patronized and made purchases at the North Highlands Starbucks, on a number of occasions, including on May 31, 2016, September 22, 2016, October 22, 2016, October 23, 2016, January 20, 2017 and February 8, 2017. (SUF #4). Mr. Johnson has also patronized

and made purchases at the Sacramento Starbucks on a number of occasions, including on June 1, 2016, June 8, 2016, October 5, 2016, December 1, 2016 and February 2, 2017. (SUF #5). The North Highland Starbucks and Sacramento Starbucks are business establishments and places of public accommodation. (SUF #6). Defendant currently owns and operates the North Highland Starbucks and did so in May, 2016, September, 2016, October, 2016, January, 2017 and February, 2017. (SUF #7). Defendant currently owns and operates the Sacramento Starbucks, and did so in June, 2016, October, 2016, December, 2016 and February, 2017. (SUF #8).

On each of his visits to both locations, Mr. Johnson found that even though there was a lowered transaction counter, the transaction counter was crowded with merchandise and displays, which limited the usable space on the counter. (SUF #9). Clear counter space allows Mr. Johnson to open his wallet or bag on the counter without fear of it falling on the floor and also gives him room to conduct his transaction. A crowded or narrow transaction counter makes it more difficult for him to do so. (SUF #10). Additionally, the door on the outside of the North Highlands Starbucks has panel-style door hardware that requires tight grasping or twisting of the wrist to operate. (SUF #11). Mr. Johnson has difficulty using these types of handles due to his manual dexterity impairments. (SUF #12). These conditions caused him difficulty, discomfort and frustration. (SUF #13).

Mr. Johnson lives in Carmichael and the Sacramento and the North Highlands Starbucks are both within 15 minutes from his home. Therefore, both locations are conveniently located for him and a convenient place for him to have coffee. (SUF #14). Mr. Johnsons enjoys the coffee and food at Starbucks and once the violations are removed, he

will return and continue to patronize both locations on a regular and ongoing basis. (SUF #15).

Defendant is not raising a financial wherewithal defense as part of readily achievable defense in this case. (SUF #16).

### III.  LEGAL STANDARD

Pursuant to section 56 of the Federal Rules of Civil Procedure, a party can bring a motion for summary judgment where there is no genuine dispute as to any material fact. Motions for summary judgment are not "disfavored." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). In the present case, there can be no genuine dispute over the facts of the case and those facts inform the Court and the parties that it would be a waste of judicial resources for this case to proceed to trial. There is no genuine issue of material fact and this court should grant the plaintiff's motion.

### IV.  THE LACK OF ACCESSIBLE FACILITIES

Under Title III of the Americans With Disabilities Act of 1990 ("ADA"), the general rule is that: "No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The term "discrimination" can be misleading. The ADA applies not just to intentional discrimination but to thoughtlessness and indifference:

> Its passage was premised on Congress's finding that discrimination against the disabled is most often the product, not of invidious animus, but rather of thoughtlessness and indifference, of benign neglect, and of apathetic attitudes

> rather than affirmative animus. The concept of "discrimination" under the ADA does not extend only to obviously exclusionary conduct—such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a Shopping Center's entrance. Rather, the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation.

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-45 (9th Cir. 2011) (internal quotes and citations removed for readability).

To succeed on his Title III, ADA claim, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). "The third element—whether plaintiffs were denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards." *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) *citing*, *Chapman*, 631 F.3d at 945. This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities" and, where there are no alterations, "a failure to remove architectural barriers…in existing facilities…where such removal is readily achievable." 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv). Thus, the following is a simplified statement of the elements necessary for the plaintiff to prove discrimination under this section:

1. Plaintiff must be disabled. 42 U.S.C. § 12182(a);
2. The defendants' facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA *Id.*;

3. The defendants must be responsible parties, i.e., owners, operators, lessors or lessees. *Id.*;

4. The defendants' facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendants failed to remove. 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv);

5. Plaintiff must have actually encountered this non-removed and unlawful barrier. A personal encounter with one barrier at a site provides plaintiff with standing to seek injunctive relief for all barriers at the same site that are related to plaintiff's disability. 42 U.S.C. § 12188(a); *Doran v. 7-11*, 506 F.3d 1191, 1202 (9th Cir. 2007).

As discussed below, Plaintiff's civil rights were violated because the Defendant failed to provide accessible facilities. Plaintiff will discuss each element, seriatim.

### A.     Plaintiff is Disabled

The plaintiff is quadriplegic. He cannot walk and has significant manual dexterity impairments. (SUF #1). He drives a specially equipped van with a lift that deploys from the passenger side of the van to accommodate his wheelchair. He has been issued a Disabled Person Placard by the California Department of Motor Vehicles. (SUF #2). There can be little doubt that he fits the qualification under the Americans with Disabilities Act as a person with a disability. 42 U.S.C. § 12102(2)(A) (defining a physical impairment substantially affecting a major life activity as qualifying as a disability). Given plaintiff's inability to walk, this is not a genuine issue.

5

Plaintiff's MSJ, P&A                    **Case:** 2:17-CV-01718-KJM-KJN

### B.     Defendants Own, Operate, Lease or Lease to a Place of Public Accommodation

The North Highland Starbucks and Sacramento Starbucks are establishments serving food or drinks. Restaurants, bars, or other establishments serving food or drink are expressly identified under the ADA as places of public accommodation. 42 U.S.C. § 12181(7)(B). Therefore, the North Highland Starbucks and Sacramento Starbucks are a place of public accommodation, which the Defendant admits. (SUF # 6). The Defendant owns and/or operates this place of public accommodation. (SUF #7 & 8). The Defendant, therefore, has an obligation to comply with the anti-discrimination provisions of Title III of the Americans with Disabilities Act.

### C.     The Starbucks Had Barriers

The ADA defines "discrimination" as a failure to remove architectural barriers where it is readily achievable to do so. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "barrier" is not defined in the Act itself but is defined in the Technical Assistance Manual:

> III-4.4100: What is an architectural barrier? Architectural barriers are physical elements of a facility that impede access by people with disabilities. These barriers include more than obvious impediments such as steps and curbs that prevent access by people who use wheelchairs.

Department of Justice, Technical Assistance Manual on the American with Disabilities Act (BNA) §§ III-4.4100 (1991). Case law is more specific. "To determine if Plaintiff describes an 'architectural barrier' the Court must turn to the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"). If an element does not meet or exceed ADAAG standards, it is considered a barrier to access." *Rush v. Denco Enterprises, Inc.*, 857

F. Supp. 2d 969, 973 (C.D. Cal. 2012) (internal cites omitted). "Any element in a facility that does not meet or exceed the requirements set forth in the ADAAG is a barrier to access." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (identifying this as the formal position of the Department of Justice). These are "objective" and "precise" standards and "the difference between compliance and noncompliance" is "often a matter of inches." *Id.* In the present case, there were several "barriers" to allowing equal access to the North Highland Starbucks and Sacramento Starbucks on the date of Mr. Johnson's visits.

### **Failure to Maintain An Accessible Transaction Counter**

In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

Additionally, the ADA Standards—a building code—cannot be divorced from the civil rights statute itself that deals with use and enjoyment of facilities. The ADA concerns itself with the use of facilities just as much as the design of facilities. The Ninth Circuit discussed the distinction in *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004). In *Fortyune*, a wheelchair user was unable to use a wheelchair seating area (and its companion seat) because a non-disabled person was

sitting in the spot and AMC refused to make the person move. *Id*. at 1078-79. Although AMC argued that it was in compliance with the ADA Standards (also called "ADAAG") because it had the required accessible seating, the Ninth Circuit noted "in cases such as Fortyune's, which concern a public accommodation's policy regarding the use of that design (e.g., the use and availability of a companion seat), the provisions of the ADAAG are not controlling." *Id*. at 1085, citing *Independent Living Resources v. Oregon Arena Corp.*, 1 F.Supp.2d 1159, 1172 (D.Or.1998) (for the proposition that it is "not surprising" that the ADAAG would be silent when it comes to an "operational" issue rather than a design one).

Here, a lowered transaction counter exists at both stores. However, the issue is Defendant's failure to make it available for use by a wheelchair user. On each of his visits to both locations, Mr. Johnson found that even though there was a lowered transaction counter, the transaction counter was crowded with merchandise and displays, which limited the usable space on the counter. (SUF #9). Just as the *Fortyune* plaintiff had his rights violated because he could not use an existing wheelchair seating area because the theater permitted the wheelchair seating space to be used for other purposes, Johnson can certainly have his rights violated if the existing lowered sales counter cannot be used by wheelchair users because Starbucks lets it be used for other purposes, such as merchandise displays.

A number of regulatory materials underscore this common-sense notion that it is not enough to merely have an accessible feature if it is not readily accessible to and usable by persons with disabilities. First, there is a statutory duty to ensure that required accessible features are maintained in usable condition. See 28 C.F.R. § 36.211(a). The section by section analysis of this code section explains the purpose for this code:

> **Section 36.211 Maintenance of Accessible Features**
> Section 36.211 provides that a public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part. The Act requires that, to the maximum extent feasible, facilities must be accessible to, and usable by, individuals with disabilities. This section recognizes that **it is not sufficient to provide features** such as accessible routes**,** elevators, or ramps**, if those features are not maintained in a manner that enables individuals with disabilities to use them**. [28 C.F.R., Part 36, Appendix C, section 36.211 (emphasis added).]

The issues raised in the case are not just building code issues but civil rights issues. In other words, it is not enough just to have a lowered section of counter, if it is not made available for use by persons with disabilities. A store manager cannot point proudly to a lowered section of counter as a defense to the claim of discrimination if that counter is removed from use or converted to another use. Merely having a physically-lowered-sales counter might satisfy a building inspector who is checking off a box, but it does not address Johnson's allegation that he was denied full and equal access because the required accessible feature (the lowered counter) was not made available to him.

In short, the Defendant crowds the countertop with merchandise display, thereby failing to provide or maintain an accessible counter for people in wheelchairs. This violates the law.

### **Lack of Accessible Door Hardware**

Door hardware must have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. 1991 Standards § 4.13.9; 2010 Standards § 404.2.7. Here, the

door on the outside of the North Highlands Starbucks has panel-style door hardware that requires tight grasping or twisting of the wrist to operate.

### D. The Barriers Are Readily Achievable to Remove

A cursory review of the Code of Federal Regulations indicates that removing the merchandise displays to make the counter usable is readily achievable. See 28 C.F.R. § 36.304(b)(4)(e.g., "Rearranging tables, chairs, vending machines, [and] display racks…"). Additionally, providing accessible door hardware is also considered presumably readily achievable. Installing accessible door hardware is specifically identified as readily achievable barrier removal. 28 C.F.R. § 36.304(b)(11).

Notably, Defendant is not raising financial wherewithal as part of a readily achievable defense in this case, therefore both expense and difficulty of remediation are not issues in this case. (SUF #16).

### E. The Plaintiff Personally Encountered These Violations and Is Being Deterred From Patronage

As established above, the North Highlands Starbucks and the Sacramento Starbucks were not accessible to disabled persons on the dates of Mr. Johnson's visits, and are still not accessible today. Not only did Mr. Johnson personally encounter the violations, but he faces the threat of continued and repeated violations.

## V. THE LACK OF ACCESSIBLE FACILITIES IS UNLAWFUL UNDER CALIFORNIA LAW

The Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Civ. Code § 51 (f). "A violation of the ADA is, by statutory definition, a violation of both the Unruh Act

and the DPA." *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012). "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims." *Molski*, 481 F.3d at 731. As discussed above under section "IV", the defendant violated the ADA. Thus, there has been a per-se violation of Unruh.

## VI.  REMEDIES

The Plaintiff seeks both injunctive relief and statutory damages. Under the ADA, the plaintiff is entitled to injunctive relief. 42 U.S.C. § 12188(a). Such injunctive relief "shall include an order to alter facilities to make such facilities readily accessible to and useable by individuals with disabilities" to the extent required by the ADA. *Id.* at 12188(a)(2). Mr. Johnson has standing to seek the fix. "Allegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008). "We have found actual or imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible." *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008).

Here, Mr. Johnson lives in Carmichael and the Sacramento and the North Highlands Starbucks are both within 15 minutes from his home. Therefore, both locations are conveniently located for him and a convenient place for him to have coffee. (SUF #14). Mr. Johnsons enjoys the coffee and food at Starbucks and once the violations are removed, he

will return and continue to patronize both locations on a regular and ongoing basis. (SUF #15).

Statutory damages can be recovered for a violation of the Unruh Civil Rights Act "if the violation denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." Cal. Civ. § 55.56(a). A denial of full and equal access takes place where a plaintiff "personally encountered" the violation and it resulted in "difficulty, discomfort or embarrassment." Cal. Civ. § 55.56(b). In the present case, all these elements are met.

Under the Civil Code, the plaintiff is entitled to recover a statutory penalty for "each offense" (Cal. Civ. Code § 52(a)) which has been defined as "each particular occasion that the plaintiff was denied full and equal access . . ." Cal. Civ. Code § 55.56(e). A plaintiff can recover for both actual encounters and occasions where personal knowledge of a barrier deterred the plaintiff from attempting patronage. Cal. Civ. § 55.56(b).

Mr. Johnson personally encountered the access standards violations on his numerous visits to both the locations. (SUF #4, 5 & 9-13). However, Mr. Johnson only seeks two statutory penalties, one for each location. There are no genuine issues in dispute here, and Mr. Johnson is entitled to the statutory award of $8,000 under the Unruh Civil Rights Act for each of his encounters. "The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 731 (9th Cir. 2007). Mr. Johnson seeks an award of $8,000.

//

## VII. CONCLUSION

The Plaintiff respectfully requests this Court grant his motion.

Dated: March 8, 2019         CENTER FOR DISABILITY ACCESS

By: */s/ Isabel Rose Masanque*
Isabel Rose Masanque
Attorneys for Plaintiff